PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JULIO LICEAGA, Defendant and Appellant.

No. 4584.—Argued December 10, 1931.—Decided December 22, 1931.

The defendant appeared personally. *E. Díaz Viera*, Assistant *Fiscal*, for appellee.

MR. JUSTICE ALDREY delivered the opinion of the Court.

This is an appeal by Julio Liceaga from a judgment of conviction for a subsequent offense of burglary in the first degree, for which he was prosecuted jointly with another defendant. He was tried separately.

The writing signed by him alone which he has filed in this Court in support of his appeal contains many assertions that we will disregard, as they are based upon matters which do not appear from the record before us. They are contained only in an unsworn petition which he filed in the lower court requesting a new trial. We will, however, consider those set out in the transcript of the evidence.

The appellant says that it was not shown that the crime was committed on the 6th of February, 1931, the date specified in the information. However, the appellant testified at the trial that he was arrested on the morning of February 7, 1931, charged with the offense committed the night before, and introduced evidence to show that on the night of February 6 he did not leave his home; so that he admits that the date set forth in the information is that of the commission of the crime of which he has been convicted.

He also says that there was neither direct or circumstantial evidence to show that he committed such crime. The man in charge of the store where the burglary took place testified that on the previous evening he closed the store and put a padlock on the front door. That on the following morning he found the padlock broken, and missed five dollars in bank notes and a few cents which were kept in a cash register that showed signs of having been forced; and that a gold ring was also missing. Juan Hernández, the owner of the store, testified that Julio Liceaga was arrested by detectives on the morning of the 7th, and had voluntarily stated at police headquarters that it was Sergio Plata who

broke the padlock of the store and entered it while he, Liceaga, in agreement with Sergio Plata, kept watch in the street; that the money taken by Sergio Plata was divided between the two; that Sergio Plata had the ring; and that the witness had made no promises to, nor had threatened, Liceaga to cause him to testify. Detective Secundino Pérez Sánchez stated that Julio Liceaga had told Juan Hernández in his presence the facts testified to by the latter and that Sergio Plata had called for him at his home after midnight and had gone out with him. Detective Susano González was present when Liceaga made the statements to Juan Hernández, whereupon Sergio Plata was arrested, and the ring was found on his person. The defendant produced as his witnesses his wife and one of his brothers who came from Guayama to San Juan to appear at the trial at the request of the appellant. Both these witnesses testified that on the night of February 6 Julio Liceaga was in his home with them and another brother, playing domino until 10 o'clock in the evening when all of them went to bed. The appellant testified that he has been convicted seven or eight times, several of them for burglary in the first degree; that on the 7th of February he left his house and was arrested and that some money belonging to him had been taken from him; that detective Cedeño asked him to testify against Sergio Plata; that at about 2 o'clock in the afternoon the detectives took him into a room and told him that if he did not tell the truth they would beat him; that one of them slapped him in the face and was on the point of striking him with a club, and that to prevent them from clubbing him he asked them to tell him what they wished him to testify, and one of them told him to say that it was Sergio Plata, and that he promised them that he would do so; and that he knew nothing about the burglary because he was sleeping at home.

The testimony of the witnesses regarding the confession of the defendant-appellant, if believed, constitutes direct evidence of his confession, as has been held in *People* v.

*Dones,* 9 P.R.R. 423; *People* v. *Eligier et al.,* 9 P.R.R. 357; and *People* v. *Rivera (a) Panchito,* 7 P.R.R. 325. It is true that the defendant denied that he had made the statements voluntarily, but this conflict in the evidence as well as that regarding the fact of whether or not he had gone out on the night of the occurrence was adjusted by the lower court against him, and it has not been shown that the court erred in so doing.

The judgment appealed from must be affirmed.

MR. JUSTICE HUTCHISON, dissenting.

In the discussion of this case it was conceded that the burden of showing the voluntary character of the confession rested upon the prosecution. There is an implied admission to the same effect in the theory of the majority opinion that the voluntary character of the confession was established by the evidence for the prosecution. See also 2 Bishop's New Criminal Procedure, (2nd edition), 1052, section 1232; the note to *Commonwealth* v. *Dascalakis,* 38 A.L.R. 116, 120, 111, Burden of Proof, b.—View that burden is on state, Subhead "Confessions to persons in authority"; *United States* v. *Wan,* 266 U. S. 1; and 16 C. J. 717, section 1468, where fifteen cases from the Puerto Rico Reports are cited in support of the statement that:

"A confession of guilt by accused is admissible against him when, and only when, it was freely and voluntarily made without having been induced by the expectation of any promised benefit nor by the fear of any threatened injury."

Defendant testified that when he was searched and the money taken from him by the detective Cedeño in the police station, he asserted that the money was his, and Cedeño said that the ownership of the money was a question which they were investigating and that what they wanted was that defendant should testify as a witness in a case against Sergio Plata, that they had information that Sergio Plata was a friend of defendant who visited defendant's house; that

defendant answered that he knew nothing about it; that Hernández (owner of the *tienda* where the burglary was committed) took the money and went away in his car; that later, about two o'clock in the afternoon, Pérez Sánchez and Susano (detectives) came and asked Cedeño what he had got and Cedeño said, "Nothing, he does not want to talk"; that one of them said, "Now you will see how he talks"; that then they took defendant to an inner room where there were some beds and defendant asked them if they were going to beat him and Susano and Pérez Sánchez then told him that if he did not tell the truth they would break his ribs with a club; that they did not want to hurt him but only wanted to use him as a witness for the prosecution; that defendant told them that he could not say that because he knew nothing about it; that he was asleep at home; that Pérez Sánchez said to him, "You are not going to say anything?" and slapped him in the face and drew a club and defendant said: "Don't beat me, what do you want me to say?"; that then they asked defendant if he knew where Sergio Plata lived and defendant said: "No"; that Sergio Plata had not visited him for a long time.

The remainder of defendant's statement relates to the details of a search for Sergio Plata in which defendant said in substance that he had been used as a decoy, as to which he is corroborated in part by the detectives. No evidence was adduced in rebuttal.

Only two witnesses for the prosecution said anything about the voluntary character of the alleged confession. One of these was the detective, Pérez Sánchez. The other was the Juan Hernández referred to in the majority opinion.

Hernández says that about 6 A. M. he was informed that the burglary had been committed; that he went immediately to the store and found that the padlock had been removed and that five dollars and some cents had been taken from the cash register; that he then went to see the detectives

and returned to the store with the detective, Cedeño; that he and Cedeño then went to a nearby place called Gandul where they found Liceaga in the street; that they arrested him and took him to the station where he was questioned; that afterwards (he does not say how long afterwards) Liceaga told witness that he was going to tell witness the truth about the whole matter and began to tell witness that he, Liceaga, and Sergio Plata had committed the burglary; that Liceaga then told witness, of his own volition, that he had not entered the store but had watched while Sergio Plata entered the same.

The statement by Liceaga that he and Sergio Plata had committed the burglary was a plenary confession of guilt. Hernández does not say that this statement was voluntary.

The subsequent statement that he had not entered the store but watched while Sergio Plata entered, was explanatory of Liceaga's participation in the commission of the offense and was probably intended as exculpatory. This is the statement which Hernández says was made by Liceaga of his own volition, not the preceding admission that he and Sergio Plata had committed the burglary.

If the previous confession of guilt was made under the influence of improper inducements, the subsequent explanation of defendant's participation in the crime so confessed (aside from any question as to whether it was intended as an exculpatory statement or a statement of extenuating circumstances) could not have been voluntary. The conviction can hardly be sustained upon the theory that Hernández meant that the previous confession of guilt had not been obtained by any improper inducements.

Conceding for the sake of argument that the statement of Hernández could reasonably be construed to mean that the whole of the confession was voluntary (as the majority opinion construes it), there would still be nothing to show the meaning of the word "voluntary" as used by the witness.

In *Hunt* v. *State*, 33 So. 329, 331, the Supreme Court of Alabama said:

"In laying the predicate for adm'tting evidence of confessions, the proper course is to show the substantive facts that no inducement, promises, and the like, were held out or made to the defendant, and that no threats, or the like, were indulged against him, for the purpose of getting the statements from him which it is proposed to show he made at the time. That he made such statements freely and voluntarily is a conclusion to be drawn by the court, when the substantive facts justify it, and is not for the predicate witness to draw and state."

It has been said that "It is not error to permit a witness to testify that a confession was voluntary, as being an opinion or conclusion, if the circumstances of the confession are in evidence." 16 C. J. 733, section 1510. Also that—

"Whether a confession is voluntary depends largely upon the facts of the particular case." Id. p. 718, sec. 1468.

The word voluntary is "practically colorless and unserviceable" as a test for the admissibility of a confession. 2 Wigmore on Evidence, (2nd edition) 154, section 831. ". . . its significance is so indefinite and loose that it does not of itself supply a solution for the various situations with their graduated differences. . ." Id. 148, 149, section 826. "As between the rack and a false confession, the latter would usually be considered the less disagreeable; but it is none the less voluntarily chosen. . . All conscious verbal utterances are and must be voluntary; and that which may impel us to distrust one is not the circumstance that it is involuntary, but the circumstance that the choice of false confession is a natural one under the conditions." Id. 145, section 824.

An apt illustration of divergent views as to what is or is not a voluntary confession may be found in *Wan* v. *United States, supra,* as reported in 266 U. S. and in 289 Fed. 908. A comparison of the facts as stated in the opinion of the Court of Appeals with those outlined in the opinion of the

Supreme Court will also show how far the color of a case may vary according to the angle from which the evidence is viewed.

In *People* v. *Cruz, ante,* p. 879, a witness testified for the prosecution on direct examination that one M who carried in his hands a switch did not assault V before he was himself assaulted by V. On cross-examination this same witness stated that M had lashed V with his switch and then explained this self-contradiction by saying that he did not consider a stroke with a switch an assault.

So, in the instant case, further inquiry by the prosecuting attorney or by the trial judge, or an intelligent cross-examination by an attorney for the defendant (if defendant had been represented by counsel) might have elicited the information that the prosecuting witness, Hernández, did not understand that a threat of violence or a slap in the face would render a confession involuntary. Yet, "A threat of corporal violence is the clearest case of an inducement that excludes the confession." 2 Wigmore on Evidence, 159, section 833.

Still assuming for the sake of argument that Hernández meant to say that the whole of the confession was voluntary, it is quite possible, even probable, that by this in turn he also meant either one or the other of two things. He might have meant that the confession was not made in response to any question asked by him or by any one else at the time. He might have meant that no threats were made just then.

The majority opinion assumes too much. First it assumes that Hernández meant to say that the whole of the confession was voluntary. Next it assumes that by this Hernández also meant that no improper inducements had been offered or used by the detectives, either in his presence or otherwise, or that if such inducements had been offered or used they had ceased to operate. An affirmance based upon a double assumption of such doubtful character violates the rule that a defendant in a criminal action is presumed to be

innocent until his guilt has been established beyond a reasonable doubt.

Defendant's statement that the alleged confession was made at about two o'clock in the afternoon stands uncontradicted by that of any other witness. Hernández does not say how long the questioning of Liceaga continued, nor how the examination was conducted, nor whether he was present at such examination. His statement that "afterwards" Liceaga confessed to him indicates that he was not present. His subsequent statement that he and Liceaga were alone when Liceaga volunteered the additional details mentioned in the majority opinion points to the same conclusion.

The statement in the majority opinion that Hernández testified that Liceaga had said that Sergio Plata had the ring is à mistake. The nearest approach to any such assertion in the testimony of Hernández is found in the following extract:

"Q.—And this?

"A.—This money was found in the possession of this gentleman.

"Q.—What money was found in his possession?

"A.—Two packs of money were found in his possession; there were four dollars or less in one of them, and in the other I do not remember, but there were two packs.

"Q.—I offer them in evidence. And this ring?

"A.—This ring belonged to the man in charge of the store, to Muñoz.

"Q.—Was it missing?

"A.—Yes, Sir.

"Q.—In whose possession was this ring found?

"A.—In Sergio Plata's.

"Q.—The person that the defendant said * * * *

"A.—Yes, Sir."

As clearly indicated by the asterisks this willing witness did not permit the prosecuting attorney to finish his question. The witness had previously volunteered the information that on taking the money from Liceaga, he told witness that they had divided the money; that Sergio Plata had taken half

and Liceaga the other half. The witness had not anywhere in his testimony imputed to Liceaga any admission or statement concerning the ring. If the unfinished portion of the question could be supplied, the logical inference would be that the prosecuting attorney was about to ask whether Sergio Plata was the person with whom Liceaga said he had divided the money, or whether Sergio Plata was the person who, according to Liceaga, had entered the *tienda* while Liceaga watched outside. There is no basis for an inference that the prosecuting attorney was about to ask whether Sergio Plata was the person who, according to Liceaga, had the ring, because the witness, Hernández, had not quoted Liceaga as having made any such statement. Such an omission cannot properly be supplied by the interpolation in a criminal case of an admission so prejudicial to defendant as the supposed statement to Hernández that "Sergio Plata had the ring."

The defendant in a criminal action has some rights which the prosecuting attorney as well as the trial judge should be required to respect. Among these, is the right to a fair trial.

In *People* v. *Valle*, 29 P.R.R. 515, 520, this Court said:

"The district attorneys are lawyers who should know the criminal law to a high degree of perfection and they should be the first to respect the rights of persons accused of crime. When th's attitude is followed strictly and firmly by them a great moral prestige and an authority which has its own influence are the results thereof. Questions should not be put to a policeman like that in this case, 'Whom did you suspect?' And an adm'ssion should not be admitted in evidence without a showing that it was really voluntary."

This was said in a case where defendant had been represented by counsel and a policeman had testified that the admission in question was voluntarily made in the presence of the prosecuting witness and others.

In the instant case defendant was not represented by counsel. There is not a single objection or exception in the whole of the stenographic record. Defendant's first futile attempt

at cross-examination coupled with his previous failure to object to flagrant violations of the rules of evidence by the prosecuting attorney should have informed the court that defendant was utterly incapable of conducting his own defense. In connection with a further discussion of Hernández's testimony enough will be quoted from the stenographic record to indicate the manner in which the case was tried. This is an aspect of the case which should have received serious consideration in disposing of the present appeal.

Returning now to the context following that part of Hernández's testimony where he said that Liceaga had told him of his own volition that he had not entered the store but had watched while Sergio Plata entered, the prosecuting attorney asked the witness what Liceaga was watching, not whether Liceaga had made any statement in this regard. The witness answered that Liceaga was watching to see if anyone was coming and witness went on to explain that as the *tienda* opened on the street and the padlock was on the front door, Liceaga was watching to see if anyone was coming. Whatever else may be said of this answer, it was at least responsive.

Next, the prosecuting attorney proceeded to put into the mouth of the prosecuting witness the further statement that Liceaga had said that he was watching by agreement with Sergio Plata while Sergio Plata was committing a theft inside. After answering a leading question to this effect in the affirmative, the witness added that then, on taking the money from Liceaga, he told witness that they had divided the money; that Sergio Plata had taken half and Liceaga the other half. At this point the stenographic record continues as follows:

"Q.—Did the defendant tell you this?
"A.—Yes, Sir:
"Q.—Voluntarily?
"A.—Voluntarily.

"Q.—Who else was there while he said that?

"A.—We were alone.

"Q.—Who are we?

"A.—He and I.

"Q.—Did you offer th's man anything for saying that?

"A.—Absolutely nothing.

"Q.—Did you compel him to testify?

"A.—Absolutely nothing.

"Q.—Did you threaten him?

"A.—Nothing absolutely."

This colloquy refers, of course, to the statement immediately preceding the same as to what Liceaga said about a division of the money, or at most to that part of the alleged confession already characterized by Hernández as voluntary, not to the admission previously made by Liceaga which is the gist of the alleged confession and not shown to have been voluntarily made, namely, that Liceaga had committed the burglary in question.

The statement that Liceaga voluntarily told about a division of the money, like the previous statement as to concerted action was not so much the testimony of the prosecuting witness as it was the testimony of the prosecuting attorney speaking through the prosecuting witness. Hernández was not a hostile witness. Nor was he a disinterested one. The least that can be said as to this aspect of the case is that if defendant had been represented by counsel it is not probable that the prosecuting attorney would have attempted this method of examination, or that such an attempt would have been successful in the face of timely objection by counsel.

The testimony of Hernández that he himself did not oblige Liceaga to confess, nor make any offer or threats cannot by any stretch of the imagination be distorted into an assertion that no such methods were employed by the detectives either in the presence of this witness or otherwise.

The testimony of the detective Pérez Sánchez, so far as it relates to the voluntary character of the confession, reads as follows:

"Q.—What part did he say that he had taken?

"A.—That he was in front of the establishment while Sergio Plata was inside, that he watched.

"Q.—How did he make that statement?

"A.—Voluntarily.

"Q.—Was this defendant on any occasion struck with a club or a blackjack?

"A.—No, Sir.

"Q.—Did you make him any offer?

"A.—No, Sir.

"Q.—Any promise or gift?

"A.—No, Sir.

"Q.—Was anything said there about being a witness for the People of Puerto Rico?

"A.—No, Sir.

"Q.—Then he made the statement voluntarily?

"A.—Voluntarily.

"Q.—Can you assure the court there was no coercion, threat or promise?

"A.—Hernández, a civilian, was there that day."

Defendant did not say that he had been struck with a club or a blackjack. His statement was that Pérez Sánchez threatened to break his ribs with a club, slapped him in the face, and drew a club, not that he was struck with a club or a blackjack. Three detectives participated in the "investigation" which was made in the police station. The fact, if it be a fact, that Pérez Sánchez made no offer or promise does not prove that no inducement was held out by either of the other two. The statement that nothing was said about becoming a witness for the People is somewhat more to the point but is not enough, without more, to establish the voluntary character of the confession. When the witness was asked whether or not he could assure the court that there was no threat or coercion or promise, his answer that Hernández had been there that day was a palpable evasion of the question. The prosecuting attorney did not insist upon an answer, and the question was not repeated.

Both Hernández and Pérez Sánchez say that Liceaga's explanation as to what he did while Sergio Plata went inside was voluntary. Beyond this the testimony of Pérez Sánchez adds little or nothing to that of Hernández as to the voluntary character of the confession.

Julio Liceaga was arrested without a warrant. He was not in hiding but was found without difficulty in the street. The fact that he had been previously convicted of other offenses was not of itself reasonable cause for believing that he had committed the burglary. *State* v. *District Court*, 233 Pac. 126. The arrest was illegal. He was not taken before any examining magistrate but directly to the police station, where the "investigation" which resulted in a confession of guilt was conducted. If, at the conclusion of this "investigation" or at any other time he was taken before a magistrate, that fact is not disclosed by the record. His detention in the police station was also illegal.

These circumstances are significant. They should not have escaped the attention of the trial judge, nor should they have been ignored by the majority in disposing of this case on appeal.

If the plain provisions of the law are not followed, some explanation should be made, or in the absence thereof convincing proof of the voluntary character of the alleged confession should be required. A fortiori, if in addition to an unexplained failure to obey the law, the alleged confession be practically the only evidence tending to connect the accused with the commission of the crime the bald statement of a witness that such confession is voluntary should not be regarded as sufficient to sustain a conviction.

In *People* v. *López, ante*, p. 487, the evidence tending to show that the confession made by Alfonso López had not been obtained by improper inducements, as it stood at the time when that confession was admitted, left much to be desired. Even at that time, however, it was stronger than the evidence

in the case at bar. In the *López* case, there was at least some testimony in rebuttal of the statement made by López while on the stand concerning the manner in which his confession had been obtained. This rebuttal testimony, if true, together with the previous statement of the chief of detectives, if true, was enough to establish the voluntary character of the confession. Nevertheless, a majority of this Court preferred to rest its affirmance upon the more doubtful ground of technical omissions in the brief for appellant and upon waiver, consent and failure to make due objection in the court below. The outstanding fact that the same majority elected to rely in the instant case upon the evidence rather than upon technical grounds relieves the writer from the necessity of showing that the adoption of any other course in the circumstances of this case would have been unconscionable.

*People* v. *López*, was a notorious case of murder in the first degree. If the doctrine thereof is to be construed in the light of facts disclosed by the record but not stated in the opinion, and if the case is then to be followed as a precedent it may make some very doubtful law. The case at bar was not in any sense a hard case. It should not have made bad law.

The judgment appealed from should have been reversed.